**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMAR GREEN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  19-2919** |
| | : | |
| **KEVIN KAUFFMAN,** *et al.* | : | |
| | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                **August 26, 2020**

The incarcerated Amar Green petitions for habeas relief for the seventh time arguing he is entitled release or a new trial because the verdict lacked sufficient evidence, his trial counsel ineffectively assisted in his defense, and the ineffective assistance of post-conviction counsel should excuse his procedurally defaulted claims.  After reviewing the record and Mr. Green's Objections, we overrule Mr. Green's Objections and adopt Judge Rice's comprehensive Report and Recommendation.  We decline to issue a certificate of appealability as reasonable jurists could not dispute our findings.

**I.        Facts adduced from the public record.**

A Philadelphia police officer heard seven gunshots on July 23, 1999 while on patrol near the 2100 block of Dickinson Street in Philadelphia.[1]  The officer found Luther Johnson bleeding, unresponsive, and without a pulse.[2]  The responding emergency medical team declared Mr. Johnson dead,[3] and an autopsy showed Mr. Johnson had suffered six gunshot wounds, including one to his head.[4]  The reporting officer later testified he heard seven gunshots: two in quick succession, followed by a pause and then the remaining five.[5]

Four years later, Marcus Franklin reported the shooting to the police and the Commonwealth arrested and charged Mr. Green and a co-defendant with the first-degree murder

of Mr. Johnson.[6]  Mr. Franklin testified he knew both the decedent and Mr. Green.[7]  Mr. Franklin

stated he saw Mr. Johnson leave a store on Dickinson Street and a car often in Mr. Green's or the

co-defendant's possession turn down the same street.[8]  Mr. Franklin saw Mr. Green in the

passenger seat of the car and Mr. Green's co-defendant in the seat behind him.[9]  The car turned

left onto Dickinson Street, and the passengers on the right passenger-seat side of the car shot Mr.

Johnson as he rode his bicycle: Mr. Green shot first, knocking the decedent off of his bicycle and

Mr. Green's co-defendant fired the remaining shots.[10]

Mr. Franklin left Pennsylvania in 2004 because "someone tried to kill him," postponing

the trial.[11]  The prosecution located Mr. Franklin and put him in the witness protection program in

November 2010.[12]  The Commonwealth reinstated the charges against Mr. Green and set trial for

August 2012.[13]

Police held Mr. Green, his co-defendant, and Mr. Franklin in the same facility overnight

during the trial.[14]  Mr. Franklin testified both Mr. Green and his co-defendant "threatened" him to

try to prevent his testimony.[15]  During Mr. Green's imprisonment, he confided to Marc Moore

about the murder.[16]  Mr. Green told Mr. Moore he killed a man on his bicycle[17] and "kept firing

until [he] fell off the bike."[18]  Mr. Moore relayed this information to a detective before trial.[19]

Mr. Green's trial counsel attempted to undermine Mr. Franklin's credibility by highlighting

the three-year delay between his witnessing the shooting and reporting it to the police during her

opening statement.[20]  Mr. Green's trial counsel referred to potential evidence which would show

Mr. Franklin's testimony to be baseless and derived from "gossip and innuendo."[21]

Philadelphia's Chief Medical Examiner Dr. Sam Gulino testified at trial as to his

independent observations confirmed in Mr. Johnson's autopsy report.[22]  The original preparer of

the autopsy determined the gunshot wounds caused the decedent's death, but she did not testify at

trial as she no longer worked in Philadelphia.[23]   Dr. Gulino concluded homicide caused Mr. Johnson's death with "a reasonable degree of medical certainty."[24]   Dr. Gulino's testimony swore the bullet wound to the left side of Mr. Johnson's head "would have been [] fatal[,]," and an additional bullet severed Mr. Johnson's spine and could have separately caused death.[25]

Two police officers testified at trial about their response to other shootings in March and August 1999.[26]   The ballistics evidence of the bullet casings recovered from those shootings matched a gun used in the killing of Mr. Johnson.[27]   After the shooting in August 1999, Officer Kerry Pleasant swore he saw Mr. Green leave the apartment building from which Officer Pleasant recovered the same gun.[28]   This testimony conflicted with Officer Pleasant's statements to homicide detectives, but he corrected it by stating he included his account of Mr. Green leaving the apartment in his on-scene incident report.[29]

Both Mr. Franklin and Mr. Moore testified at trial.[30]   Mr. Green's trial counsel cross-examined the detective who took Mr. Moore's testimony.[31]   Detective Dougherty posited Mr. Moore's testimony came from Mr. Green because of the "precise" nature of Mr. Moore's testimony.[32]   Mr. Green's trial counsel highlighted the inconsistencies between Mr. Franklin and Mr. Moore's testimony.[33]

Neither defendant testified.[34]   At the close of trial, counsel for Mr. Green's co-defendant attempted to argue a jury could consider his client's not-guilty plea as evidence tending to prove his innocence.[35]   The prosecutor refuted this by explaining a plea is not exculpatory evidence because it cannot be cross-examined, to which Mr. Green's counsel twice objected.[36]

The trial judge instructed the jury to not consider attorney arguments as evidence.[37]   The trial judge also instructed the jury it "may consider" Mr. Green and his co-defendant's threats to Mr. Franklin on the eve of trial "as tending to prove [their] consciousness of guilt," but were "not

required to do so."[38]   The trial judge instructed the jury it should evaluate inconsistencies in statements Mr. Franklin and Mr. Moore gave before the trial and their testimony at trial.[39]   The jury convicted Mr. Green of, among other things, first-degree murder,[40] but the jury acquitted Mr. Green's co-defendant.[41]

Mr. Green appealed his conviction to the Pennsylvania Superior Court.[42]  Mr. Green argued the judgment against him should be vacated for insufficient evidence to prove he had the requisite specific intent for first-degree murder and because of the impropriety of the trial judge's consciousness of guilt instruction.[43]  The Superior Court rejected both claims.[44]  The Pennsylvania Supreme Court did not grant review.[45]

Mr. Green then petitioned for post-conviction relief to overturn his conviction and the trial court dismissed his petition.[46]  Mr. Green appealed arguing the post-conviction court erred by dismissing his claims of ineffective assistance of trial counsel for not presenting character witnesses to testify as to Mr. Green's "non-violent" nature and ineffective assistance of trial counsel for not requesting a mistrial after the prosecutor stated a not-guilty plea could not be considered exculpatory evidence.[47]  The Superior Court rejected both claims on the merits.[48]

## II.    Analysis

Mr. Green timely petitioned for habeas relief.[49]  Mr. Green raises three claims denied by the state courts: (1) the Commonwealth did not present sufficient evidence to support his first degree murder conviction; (2) trial counsel was ineffective for failing to call character witnesses to testify about his reputation for peacefulness; and, (3) trial counsel was ineffective for not seeking a mistrial after the prosecutor improperly discussed his right to remain silent.[50]

Mr. Green adds five claims in his petition he did not present for the state court's review: (1) ineffective assistance of trial counsel for not requesting a mistrial after the trial court admitted

4

both the decedent's autopsy into evidence and testimony from another medical examiner; (2) ineffective assistance of trial counsel for failing to object to Officer Pleasant's "perjured" testimony; (3) ineffective assistance of trial counsel for positing there were "rumors" Mr. Green committed the murder and these rumors could be used as evidence against him; (4) ineffective assistance of trial counsel for deficient questioning of Detective Dougherty; and (5) a violation of his due process rights due to the trial court's instructions to the jury to consider both defendants' threats to Mr. Franklin as indicative of their consciousness of guilt.[51]  As Mr. Green failed to present these claims for state court review, they are procedurally defaulted, and we cannot consider their merits unless Mr. Green meets his burden to excuse the procedural default.

The Honorable Timothy R. Rice "respectfully recommend[ed] [we] dismiss[] Green's claims with prejudice as meritless and procedurally defaulted."[52]  After an extension due to COVID-19 mitigation in his prison, Mr. Green objected to Judge Rice's recommendations as to each of his claims but did not raise new evidence or allege Judge Rice committed legal error.[53]  He repeats his same arguments but now casts them as objections to Judge Rice's Recommendation. In an abundance of caution, we will consider Mr. Green as objecting to the entirety of Judge Rice's Recommendation.  After studying the record, Judge Rice's thoughtful analysis, and Mr. Green's objections, we adopt Judge Rice's Report and Recommendation, reject Mr. Green's previously raised claims as well as his newly raised procedurally defaulted claims, and deny his petition with prejudice.  We further find no basis for an evidentiary hearing[54] or a certificate of appealability.

###### A.      Mr. Green may not proceed on claims state courts rejected on the merits.

We first look to the three claims Mr. Green raises today which he previously raised before the state courts.  We may only review a section 2254 habeas petition if the petitioner alleges his imprisonment is "in violation of the Constitution, laws, or treaties of the United States."[55]

If the petition meets this threshold, we apply a two-prong test under section 2254(d) where a petitioner challenges a state court's judgment made on the merits.[56]   Congress, in section 2254(d)(1), requires a federal court to overturn a state court decision if it "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court] law."[57]   A state court's decision is "contrary to" clearly established Supreme Court law where the state court incorrectly relies on a "different" law than one controlling the specific issue.[58]   A state court decision applying the applicable Supreme Court law "will rarely be unreasonable"[59] and a federal court can only grant habeas relief if the state court "unreasonably" applies the applicable law to the set of facts,[60] and not if the state court applies the applicable law "incorrectly" to the set of facts.[61]   Federal habeas review of a state court decision under section 2254 is highly deferential to the state court, and a federal court can only overturn the decision if it is "firmly convinced" the state court's decision amounted to a constitutional violation.[62]

Congress's second prong of review under section 2254(d) requires we consider whether the state court made an "unreasonable determination of the facts" given the evidence presented.[63] We afford a similarly high level of deference to the state court's determination as we do in the first prong of section 2254(d) and we "presume[] [the state court] to be correct."[64]   The habeas petitioner must show the state court's determination of fact to have been unreasonable by "clear and convincing evidence."[65]

Mr. Green raises claims rejected by the Pennsylvania Superior Court on both direct appeal and in a post-conviction appeal on the merits: (1) insufficient evidence to convict for first-degree murder, (2) ineffective assistance of trial counsel for failing to call character witnesses, and (3) ineffective assistance of trial counsel for failing to request a mistrial after the prosecution stated a not-guilty plea could not be considered as exculpatory evidence.[66]

1.     **The Pennsylvania Superior Court did not unreasonably apply the law or determine facts in rejecting Mr. Green's insufficient evidence challenge on the merits.**

Mr. Green argues we should overturn his conviction because the prosecution did not prove he had the "premeditated specific intent to kill."[67]  A sufficiency of the evidence challenge to a state court conviction is a constitutional claim and satisfies the requirement of section 2254(a) for our review.  As Mr. Green raised this same constitutional claim on his direct appeal and because the Superior Court rejected it on the merits, we conduct our review under section 2254(d) allowing us to grant relief if (1) the state court decision was (1) contrary to clearly established federal law, or (2) " based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[68]

We first consider whether the Superior Court applied a law "contrary to" the controlling Supreme Court law on insufficiency of evidence challenges.[69]  The Supreme Court in *Jackson v. Virginia* defined the scope of our review of challenges to the sufficiency of the trial evidence.[70]  Under *Jackson*, we must "view[] the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[71]  The Court's *Jackson* standard "preserve[s]" the jury's determination about the evidence[72] and affords the state appellate court's review of the sufficiency of evidence challenge deference.[73]

The Superior Court's application of a similar standard to *Jackson* satisfies Congress's requirements in section 2254(d)(1).  On Mr. Green's direct appeal, the Superior Court applied a Pennsylvania standard of review which required it consider the evidence from the trial "in the light most favorable to the Commonwealth."[74]  This standard is neither contrary to, nor an unreasonable application of, the *Jackson* standard.

7

We next consider whether the Superior Court made an unreasonable determination to reject Mr. Green's sufficiency of the evidence challenge based on the evidence presented at trial. The Superior Court rejected Mr. Green's sufficiency of the evidence challenge by determining the evidence presented at trial sufficiently established Mr. Green had the specific intent to kill Mr. Johnson.[75]   The Superior Court relied on established Pennsylvania precedent where a defendant commits the shooting "in concert" with another the prosecution need not prove the defendant fired the "fatal shot" to show specific intent.[76]   The court added Dr. Gulino's independent evaluation of the autopsy report as supplementary evidence to support its affirmance.[77]   The autopsy report noted Mr. Johnson sustained a gunshot wound to the forehead and Dr. Gulino determined it "certainly would have been [] fatal[]."[78]   The court cited to earlier Pennsylvania decisions which held specific intent can be shown where the defendant "used a deadly weapon on a vital part of the decedent's body", and the autopsy report with Dr. Gulino's testimony could be used by the jury to support the conviction.[79]

In *Kirnon v. Klopotoski*, Judge Yohn denied a habeas petition based on a similar evidentiary showing.[80]   The Commonwealth convicted the petitioner of first-degree murder after a shootout.[81]   The Commonwealth's conviction rested on eyewitness testimony.[82]   The habeas petitioner alleged insufficient evidence to support his conviction on appeal, and the Superior Court rejected the claim by relying on eyewitness testimony, which not only placed the petitioner "at the scene of the murder" but also confirmed "he, along with his associate, actively participated in the shooting[.]"[83]   As the petitioner did not refute the existence of eyewitness testimony during habeas proceedings, Judge Yohn rejected the claim.[84]   Judge Yohn held the Superior Court's reliance on eyewitness testimony in affirming the conviction not to be an "unreasonable factual determination" under section 2254(d)(2).[85]

8

Like in *Kirnon*, the Superior Court did not make an unreasonable determination in rejecting Mr. Green's sufficiency of the evidence claim based on the facts adduced at trial. Mr. Franklin testified he saw Mr. Green and his co-defendant shoot Mr. Johnson.[86] The responding medical emergency team pronounced Mr. Johnson dead at the scene.[87] The Superior Court's decision relied on Mr. Franklin's eyewitness testimony and the Pennsylvania "concert of action" precedent to affirm the trial court's finding Mr. Green possessed the requisite specific intent to be convicted of first-degree murder.[88]

Mr. Green presents no evidence to suggest the Superior Court made an unreasonable determination in light of this eyewitness testimony. Mr. Green's claim for insufficient evidence is no different from his direct appeal.[89] Like the petitioner in *Kirnon*, Mr. Green does not refute Mr. Franklin's eyewitness testimony.[90] He instead tries to undermine the reliability of Dr. Gulino's independent determinations of the autopsy report.[91] The Superior Court considered Dr. Gulino's testimony and the report as additional evidence to support Mr. Green's conviction.[92]

We agree with Judge Rice's Report and Recommendation recommending we dismiss this claim with prejudice. We decline to grant Mr. Green relief on his insufficiency of evidence claim.

**2.    The post-conviction court did not unreasonably apply the law or determine facts in rejecting Mr. Green's claim of ineffective assistance of trial counsel for failing to call character witnesses on the merits.**

Mr. Green argued in the Pennsylvania Superior Court and repeats now his trial counsel rendered ineffective assistance by not calling character witnesses to testify as to his "non-violent character."[93] The post-conviction court rejected this claim on the merits.[94] The Sixth Amendment guarantees both the "right to counsel" and the "right to [] effective assistance of counsel."[95] We have jurisdiction to review Mr. Green's claims of ineffective assistance of counsel under section 2254(a).[96] As Mr. Green raised this same constitutional claim on his direct appeal and

9

because the Superior Court rejected it on the merits, we conduct our review under section 2254(d) allowing us to grant relief if (1) the state court decision was contrary to clearly established federal law, or (2) it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[97]

The Superior Court did not apply a law "contrary to" the controlling Supreme Court law on ineffective assistance of counsel challenges.[98]  We apply the Supreme Court's well-established *Strickland v. Washington* standard in evaluating the effectiveness of Mr. Green's counsel.[99] Mr. Green must show his trial counsel performed "deficient[ly]" and thereby prejudiced him.[100]

We find no basis to disagree with the Pennsylvania courts' holding trial counsel performed deficiently if they "made errors so serious" so as to not qualify as "counsel" for the purposes of the Sixth Amendment.[101]  Federal habeas review of Mr. Green's trial counsel performance is "highly deferential" and considers counsel to have performed "within the wide range of reasonable professional assistance" unless shown otherwise.[102]  Mr. Green must present evidence his counsel did not engage in "sound trial strategy."[103]  Counsel has not acted "unreasonabl[y"] if Mr. Green's character or background prompted counsel to not engage in "fruitless or even harmful" inquiries."[104]  Our Court of Appeals has held counsel cannot be considered ineffective for refusing to pursue a "meritless claim."[105]

Counsel's performance prejudices a petitioner if the severity of their errors "deprive[s] the [petitioner] of a fair trial."[106]  The petitioner bears the burden of demonstrating "but for counsel's [] errors" there existed a "reasonable probability" the underlying lawsuit would have been decided differently.[107]  The strength of the evidentiary record at trial affects the merits of the prejudice prong of the *Strickland* test.[108]  The reviewing habeas court must consider the entire evidentiary record in determining prejudice.[109]

We need not consider section 2254(d)(1) as the post-conviction court applied a "refined" *Strickland* standard to Mr. Green's ineffective assistance claim for failing to call character witnesses.[110]

We now must consider whether the post-conviction court made an "unreasonable determination" to reject Mr. Green's ineffective assistance of counsel claim based on the facts. The post-conviction court rejected Mr. Green's ineffective assistance of counsel claim on the merits.[111] In its review, the court reasoned Mr. Green's trial counsel engaged in sound trial strategy by not calling character witnesses because they could have presented damaging information about Mr. Green.[112] As the prosecution prepared to undermine any positive inferences from the character witnesses, the post-conviction court considered Mr. Green's previous criminal history and his role in other shootings would render any benefit from their testimony negligible.[113]

Our Court of Appeals has examined an ineffective assistance of counsel claim in a similar context.[114] In *Jeffs*, the jury convicted the petitioner of first-degree murder after he admitted to shooting the decedent in self-defense.[115] The petitioner sought to overturn the conviction by alleging ineffective assistance of trial counsel for its failure to call a character witness who would have testified to the decedent's "aggressive behavior," potentially "exculpat[ing]" the petitioner by lending support to his self-defense claim.[116] Our Court of Appeals rejected the petitioner's claim, reasoning the decision to not call the witness sounded in strategy because the testimony could have been damaging.[117] It would have invited testimony both to the decedent's "peaceful" nature and the petitioner's "aggressive" behavior, thereby casting doubt on the self-defense claim.[118]

Mr. Green fails to adduce a basis for us to find the post-conviction court made an unreasonable determination in rejecting his ineffective assistance claim where trial counsel did not

call character witnesses. Like the defense attorney in *Jeffs*, Mr. Green's trial counsel exercised sound trial strategy by not calling the character witnesses as it would have permitted questions about Mr. Green's criminal background and role in other shootings.[119] Mr. Green does not indicate the testimony would do anything beyond show he had "good character."[120] Mr. Green argues the testimony would be exculpatory by "undermin[ing] the inconsistent eyewitness" testimony of Mr. Franklin,[121] but the trial judge instructed the jury to consider this inconsistency in its deliberations.[122] Mr. Franklin's testimony played an integral role in the prosecution's case against Mr. Green.[123] Mr. Green's failure to allege facts as to how the character witness testimony would have negated this principal form of evidence for his conviction is also a failure to show this decision prejudiced him.

The cases to which Mr. Green cites provide no support to his argument as they contain no factual parallels.[124] Mr. Green cited *Commonwealth v. Neely*, which involved a defendant who the witnesses considered a "peaceful and law-abiding citizen."[125] The evidence adduced both at trial and Mr. Green's post-conviction proceedings support the notion he is neither.[126] His citation to *Commonwealth v. Weiss* is also misguided as the underlying criminal trial relied on "direct" eyewitness testimony of the defendant and the victim.[127] Neither defendant testified in Mr. Green's trial, and the victim could not do so.

As Judge Rice concluded "[a]ny potential benefit from character testimony would have been negated by the introduction of Green's criminal history."[128] We adopt Judge Rice's Report and Recommendation and reject Mr. Green's claim of ineffective assistance of trial counsel for not calling character witnesses.[129]

12

### 3.   The post-conviction court did not unreasonably apply the law or determine facts in rejecting Mr. Green's claim of ineffective assistance of trial counsel for not requesting a mistrial due to alleged prosecutorial misconduct at the trial's end.

Mr. Green argues his trial counsel provided ineffective assistance for not demanding a mistrial after the prosecution created an alleged "negative inference" with respect to Mr. Green's not-guilty plea.[130]   The post-conviction court rejected this claim on the merits.[131]   Prosecutorial misconduct invokes a defendant's due process rights.[132]   As both ineffective assistance and prosecutorial misconduct claims implicate constitutional rights, we can properly review them under section 2254(a).[133]

The post-conviction court applied the prejudice prong of the *Strickland* ineffective assistance standard, so we need not make section 2254(d)(1) the focus of our inquiry as the *Strickland* standard is conjunctive.[134]   We must determine whether the post-conviction court made an unreasonable determination in rejecting Mr. Green's claim of ineffective assistance based on the statements of the prosecution.

A prosecutor's actions at trial violate due process if they "infect[] the trial with unfairness."[135]   The prosecution's misconduct must not be viewed in isolation.[136]   The court examining the misconduct must review the "severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."[137]   A reviewing court must also exercise caution in evaluating counsel's conduct at the end of the trial.[138]   The prosecution's closing arguments should not "lightly" be considered to "have [their] most damaging meaning" nor be assumed to be construed as such by the jury.[139]

The post-conviction court did not apply a standard contrary to *Strickland* in its assessment of defense counsel's actions at the end of the trial.[140]   The *Strickland* standard is conjunctive: it requires a petitioner to show their counsel performed deficiently and this performance prejudiced

13

them.[141]   The post-conviction court only applied the Pennsylvania equivalent to the prejudice prong of the *Strickland* test.[142]   We now review whether the post-conviction court made an unreasonable determination given the facts of his case by rejecting Mr. Green's claim of ineffective assistance of trial counsel for failing to request a mistrial in light of the prosecution's remarks.

Neither Mr. Green nor his co-defendant testified at trial and both pleaded not guilty.[143]   At the close of trial, defense counsel for Mr. Green's co-defendant "improperly" attempted to argue the jury could consider his client's not-guilty plea as tending to show his innocence.[144]   The prosecution refuted this argument by stating the jury could not consider the co-defendant's plea as evidence of guilt or innocence because the co-defendant did not avail himself to cross-examination.[145]   Defense counsel twice objected to the prosecution's comments.[146]   The post-conviction court rejected Mr. Green's claim of ineffective assistance of counsel for lack of prejudice because the jury acquitted his co-defendant despite this exchange.[147]   The prosecutor directed his statements in response to the co-defendant's counsel.[148]   The post-conviction court considered the prosecution's comments to be a "fair response to the other defense counsel's ploy."[149]

Our Court of Appeals considered a similar ineffective assistance claim to the one Mr. Green's now raises in *Werts v. Vaughn*.[150]   The petitioner in *Werts* argued his trial counsel rendered ineffective assistance by failing to request a mistrial and object to the prosecution's remarks during closing arguments.[151]   Our Court of Appeals evaluated whether the comments were an "invited response" to arguments made by defense counsel, and whether the prosecutor "went no further than required to right the scale."[152]   The court held the prosecutor's remarks neither warranted a mistrial nor constituted misconduct as they fairly responded to comments made by defense counsel.[153]   The court also rejected the petitioner's argument of ineffective assistance as counsel

14

cannot be considered ineffective for lack of objection to "not improper" prosecutorial comments.[154]

The post-conviction court did not make an unreasonable determination of the facts by rejecting Mr. Green's claim of ineffective assistance of counsel for failing to request a mistrial because the prosecutor did not commit misconduct. Mr. Green fails to show his trial counsel prejudiced him by not requesting a mistrial.[155] Mr. Green cannot argue ineffective assistance of counsel in the first instance as there is no evidence of prosecutorial misconduct. Like the prosecution in *Werts*, the defense counsel's comment "invited" the prosecutor's response.[156] The prosecutor's statement a plea could not be considered exculpatory evidence "went no further than required to right the scale."[157] Counsel for Mr. Green objected to the prosecutor's responses unlike the defense counsel in *Werts*.[158] But consideration of the objection is immaterial to our inquiry as Mr. Green fails to show the prosecutor's comments constituted misconduct. As there is no showing of misconduct, Mr. Green's claim of ineffective assistance fails on the merits.[159]

We agree with Judge Rice's Report and Recommendation and decline to grant relief on Mr. Green's claim of ineffective assistance of counsel for failing to request a mistrial as he fails to plead prosecutorial misconduct.[160]

**B.    We deny Mr. Green's procedurally defaulted habeas claims**.

We now review Mr. Green's claims which he raises today but failed to raise in state court. A habeas petitioner must first argue their claims in state court before they can raise them in a section 2254 petition as section 2254(b)(1)(A) prevents us from granting federal habeas relief if the petitioner failed to "exhaust[] the remedies" at the state level.[161] Failure to comply with section 2254(b)(1)(A) renders the unraised claims "procedurally defaulted."

Yet a procedural default on a habeas claim does not necessarily prevent our review.[162]  To enable our review, a petitioner must show "cause for the default[,]" and the underlying claim asserted "actual[ly] prejudice[d]" them at their initial trial, or a federal court's refusal to review the procedurally defaulted claim "will result in a fundamental miscarriage of justice."[163]  Our Court of Appeals held a petitioner can show cause for a procedural default if "some objective factor external to the defense" prevented their bringing the defaulted claim in state court.[164]  Our Court of Appeals defines a "fundamental miscarriage of justice" argument as requiring the petitioner to present evidence establishing their "actual innocence."[165]  A habeas petitioner alleges "actual innocence" by presenting "new evidence" which would prevent any factfinder from concluding the petitioner's guilt "beyond a reasonable doubt."[166]

A petitioner can show cause to defeat a procedural default on an ineffective assistance of trial counsel claim where the post-conviction counsel falls below the *Strickland* standard.[167]  A petitioner must show the "underlying ineffective assistance of trial counsel claim is [] substantial" and has some merit.[168] A petitioner must show both trial and post-conviction counsel rendered ineffective assistance to establish the "cause" prong of the *Coleman* excusal-of-procedural-default test.[169]

A petitioner pleads "actual prejudice" for their procedurally defaulted claim where the trial counsel's performance contributed to their "actual and substantial disadvantage," and "infect[ed] [the petitioner's] trial with error of constitutional dimensions."[170]

Mr. Green brings five claims he did not raise in the state court: (1) ineffective assistance of trial counsel for failing to object to the admission of the decedent's autopsy and testimony from an independent medical examiner, (2) ineffective assistance of trial counsel for failing to object to Officer Pleasant's perjured testimony, (3) ineffective assistance of trial counsel for discussing

16

rumors about Mr. Green during trial counsel's opening remarks and whether these rumors could have been used as evidence against Mr. Green, (4) ineffective assistance of trial counsel for failing to object to Detective Dougherty's vouching for Mr. Moore, and (5) the trial judge's instruction to the jury to consider Mr. Green and his co-defendants' threats to Mr. Franklin as indicative of their consciousness of guilt violated Mr. Green's due process rights.[171]

Mr. Green presents no new evidence of actual innocence; our review of his procedurally defaulted claims is limited to whether Mr. Green can show cause and prejudice from the underlying trial counsel claims to warrant relief.[172]

> **1.    Mr. Green's procedurally defaulted claim of ineffective assistance of trial counsel for failing object to the admission of the autopsy report and testimony from a different medical examiner cannot be excused as it lacks merit.**

Mr. Green argues the trial court's admitting the autopsy report and permitting someone other than its original preparer to testify as to its contents violated his Sixth Amendment Confrontation Clause rights.[173]   We must assess whether Mr. Green pleads a "substantial" claim of ineffective assistance of trial counsel before we can determine whether post-conviction counsel rendered ineffective assistance because this claim is procedurally defaulted.[174]   Mr. Green bears the burden of demonstrating his underlying claim has merit and the decision to not object to admission of the autopsy report and testimony from another medical examiner fell below *Strickland's* "wide range" of adequate legal assistance and "deprived" Mr. Green of a fair trial in light of the entire evidentiary record.[175]

The Confrontation Clause affords a criminal defendant "the right . . . to be confronted with the witnesses against him."[176] The Confrontation Clause bars the admission of "testimonial" evidence or statements of certain witnesses who are unable to testify and permits admission of

such evidence or statements only if the witness is "unavailable" to testify or the defendant "had a prior opportunity to cross-examine" them.[177]

The Supreme Court has not opined on whether an autopsy report qualifies as "testimonial evidence" under the Confrontation Clause.[178]  The United States District Court for the Southern District of New York interpreted this lack of settled law as a reason to deny a habeas petitioner's ineffective assistance of counsel claim similar to the one before us.[179]  In *Johnston v. Mahally*, Judge Robreno reached a similar conclusion in a different habeas context.[180]  A state jury convicted the defendant of the first-degree murder of two victims.[181]  The prosecution called a medical examiner who did not prepare the autopsy reports to testify as to the cause of the deaths of the decedents.[182]  The prosecution "asked" if the examiner could make an independent determination by examining the autopsy reports, to which defense counsel objected.[183]  The defendant's habeas petition alleged the medical examiner's testimony and the admission of the autopsy reports into evidence violated his Confrontation Clause rights.[184]  Judge Robreno rejected the petitioner's claim, adding "even if" the admission of this evidence violated the petitioner's Confrontation Clause rights, the totality of the evidence adduced at trial supported upholding the conviction.[185]

Though our review of Mr. Green's Confrontation Clause claim is under an ineffective assistance of trial counsel standard, Judge Robreno's decision is persuasive.  Even if we concede Mr. Green's trial counsel performed deficiently under *Strickland* by not objecting to the admission of this evidence, we must reject his claim for failure to show the evidence prejudiced him at trial.[186]  Much of Mr. Green's claim focuses on the effect the autopsy evidence might have had on his conviction.[187]  Yet the Superior Court affirmed his conviction by relying on Mr. Franklin's eyewitness testimony and settled Pennsylvania precedent on killings committed in concert with another person.[188]  Like the petitioner addressed by Judge Robreno in *Johnston*, evidence other

than the autopsy report and medical examiner's testimony formed the basis of Mr. Green's conviction.[189] Mr. Green speculates about the "effect" the autopsy testimony had on his conviction.[190] Yet the state court cases he cites do not include instances of testimony or evidence inadmissible under the Confrontation Clause which affected the outcome of the criminal defendant's trial.[191]

We agree with Judge Rice's Report and Recommendation and decline to apply the *Martinez* exception for Mr. Green's procedurally defaulted claim as the underlying claim of ineffective assistance lacks prejudice.[192]

> **2.    Mr. Green's procedurally defaulted claim of ineffective assistance of trial counsel for failing to object to perjured testimony cannot be excused because it lacks merit.**

Mr. Green argues his trial counsel rendered ineffective assistance by failing to object to Officer Kerry Pleasant's testimony about the difference between his testimony at trial and his statement to detectives after the August shooting.[193] Officer Pleasant wrote in his on-scene incident report and testified at trial he saw Mr. Green leave the apartment building, but told the homicide detectives he saw another person.[194] Mr. Green alleges this "conflicting and contradictory testimony" constituted perjury, and his trial counsel rendered ineffective assistance by failing to object to it.[195] Mr. Green bears the burden of showing his ineffective assistance claim has merit to overcome its procedural default.[196]

Our Court of Appeals defines perjury as a witness "giv[ing] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."[197] A "discrepancy" in a witness's testimony is "not enough to prove perjury."[198] Perjured testimony violates a habeas petitioner's due process rights if the state "presents or fails to correct" it during the criminal trial.[199] A habeas petitioner alleging a

claim of perjured testimony has the burden of establishing "(1) [the witness] committed perjury, (2) the Commonwealth knew or should have known that the testimony was false, (3) the false testimony was not corrected, and (4) there is a reasonable likelihood that the perjured testimony could have affected the judgment of the jury."[200]

Mr. Green fails to present evidence Officer Pleasant "willfully intended" to provide false testimony as to whom he saw leave the apartment building after the August shooting.[201] Mr. Green pleads conclusory statements in his petition and labels Officer Pleasant's testimony as "deliberate deception" but nowhere alleges facts to prove Officer Pleasant deliberately gave false testimony.[202] Because Mr. Green pleads no facts Officer Pleasant provided perjured testimony, Mr. Green's ineffective assistance of trial counsel for failing to object to the testimony must also fail.[203] Mr. Green cannot show cause for its procedural default because the underlying ineffective assistance of trial counsel claim lacks merit.[204]

We agree with Judge Rice's Report and Recommendation and decline to excuse the procedural default of Mr. Green's claim of ineffective assistance of trial counsel for failing to object to Officer Pleasant's testimony.[205]

### 3. Mr. Green's procedurally defaulted claim of ineffective assistance of counsel for their statements made during opening remarks cannot be excused because it lacks merit.

Mr. Green argues trial counsel rendered ineffective assistance by referencing "rumors" as to whether Mr. Green committed the murder and this reference could have been used as evidence against him in violation of his Confrontation Clause rights.[206] During opening remarks, Mr. Green's counsel stated the evidence at trial would cast doubt on Mr. Franklin's eyewitness testimony as being based on "gossip" because of the delay between the murder and Mr. Franklin's report of it to the police.[207] Mr. Green argues these remarks could have been used as "additional

evidence" as he could not respond to them at trial.[208]  Mr. Green must allege the underlying ineffective assistance of trial counsel argument has merit to show cause and excuse its procedural default.[209]

The Confrontation Clause protects a criminal defendant from "testimonial statements of witnesses" unable to testify or be questioned at trial unless the witness either cannot appear at trial or the defendant had a "prior opportunity to cross-examine" the witness.[210]  Our Court of Appeals has held the remarks or arguments of counsel "are simply not evidence."[211]  Before considering the evidence from trial and returning a verdict, juries are given instructions as to how to weigh the evidence in their decision and are "presumed to follow [] instructions."[212]

Mr. Green's claim trial counsel violated his Confrontation Clause rights by discussing rumors during opening argument lacks merit.  Mr. Green's counsel posited whether "gossip and innuendo" from the neighborhood formed the basis of Mr. Franklin's eyewitness testimony.[213] Mr. Green incorrectly characterizes this as "additional evidence" by which the jury could have found Mr. Green guilty.[214] Counsel's arguments are not evidence and Mr. Green does not assert the Commonwealth admitted the "rumors" into evidence.[215]  Even if the jury considered the mention of these rumors as evidence, the trial judge instructed the jury to not consider counsel arguments as evidence, and we presume the jury will follow the judge's instructions.[216]

We agree with Judge Rice's Report and Recommendation and decline to excuse the procedural default of Mr. Green's claim of ineffective assistance of trial counsel for their opening remarks as arguments of counsel are not evidence for the purposes of the Confrontation Clause.[217]

4.      **Mr. Green's procedurally defaulted claim of ineffective assistance of trial counsel for cross-examining Detective Dougherty and allowing him to vouch for the testimony of Mr. Moore cannot be excused because it lacks merit.**

Mr. Green argues his trial counsel rendered ineffective assistance by cross-examining Detective Dougherty so as to "elicit[] the detective's belief that [Mr. Moore] was truthful."[218] Under questioning, Detective Dougherty stated he "believe[d]" Mr. Moore's testimony came directly from Mr. Green as his testimony "is so precise."[219] Mr. Green categorizes this as "opinion evidence . . . [as to] witness credibility," essentially alleging Detective Dougherty vouched for Mr. Moore as a witness.[220] Mr. Green bears the burden of establishing his procedurally defaulted claim of ineffective assistance for facilitating this witness vouching has some merit to excuse its default.[221]

Our Court of Appeals defines witness vouching as instances where the prosecuting attorney "suggests that she has reasons to believe a witness that were not presented to the jury."[222] An integral component of vouching is its reference to information not included in the evidentiary record.[223] An attorney can argue a witness is "trustworthy" by reference to the witness's testimony presented to the jury.[224]

Detective Dougherty did not vouch for the testimony of Mr. Moore based on this definition. Mr. Green's petition includes a citation to the transcript from his trial as evidence of Detective Dougherty's vouching.[225] Yet the full section of defense counsel's questioning of Detective Dougherty reveals his opinion Mr. Moore's testimony came from Mr. Green because of the "precise" nature of Mr. Moore's testimony.[226] Witness testimony is record evidence. Mr. Green's underlying ineffective assistance of counsel claim lacks merit.

We agree with Judge Rice's Report and Recommendation and decline to excuse the procedural default of Mr. Green's claim of ineffective assistance of trial counsel as trial counsel's questioning of Detective Moore did not constitute witness vouching.[227]

> **5.    Mr. Green's procedurally defaulted claim regarding the trial judge's instructions as to his consciousness of guilt cannot be excused because he fails to show the instructions prejudiced him.**

Mr. Green makes several claims in his habeas petition about the trial judge's instruction to the jury as to his and his co-defendant's consciousness of guilt for trying to prevent Mr. Franklin's testimony.[228]   The trial judge instructed the jury it could consider Mr. Franklin's testimony about the co-defendant's threats as proving their "consciousness of guilt" if they "believe[d] this evidence," but did not "require" this of the jury.[229]   Mr. Green alleges the trial judge lacked sufficient evidence to give this instruction, the instruction created a "mandatory presumption" he committed the murder, and his trial counsel's failure to object to the instruction prejudiced him.[230]

Mr. Green fails to plead facts demonstrating the trial judge's instructions prejudiced him. The instruction applied to both Mr. Green and his co-defendant.[231]   Yet the jury acquitted Mr. Green's co-defendant.[232] Mr. Green does not explain how the instruction operated as a "mandatory presumption" to his guilt but not to his co-defendant's.[233]

We agree with Judge Rice's Report and Recommendation and decline to excuse the procedural default of Mr. Green's due process claim as to the trial judge's instructions because Mr. Green fails to show prejudice.[234]

> **C.    We deny a certificate of appealability.**

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition."[235]   Congress, in section 2253, provides the standard for a

certificate of appealability required for appellate review of a district court's judgment denying

habeas relief:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

>> (B) the final order in a proceeding under section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).[236]

A certificate of appealability "will issue only if the requirements of § 2253 have been

satisfied."[237]  A habeas petitioner seeking a certificate of appealability "need only demonstrate 'a

substantial showing of the denial of a constitutional right.'"[238]  A petitioner "satisfies this standard

by demonstrating that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."[239]

Federal Rule of Appellate Procedure 22 contemplates a district court issuing a certificate

of appealability in the first instance:

> (b) Certificate of Appealability. (1) In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit

justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district clerk must send to the court of appeals the certificate (if any) and the statement described in Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254 or § 2255 (if any), along with the notice of appeal and the file of the district-court proceedings. If the district judge has denied the certificate, the applicant may request a circuit judge to issue it.[240]

Given the standard we apply today to habeas challenges to state trial court rulings and ineffectiveness of counsel, we cannot find jurists of reason could disagree with our reasoning in denying the petition.  Mr. Green has not met his burden in showing a reasonable jurist would disagree with the denial of his petition.

## III.   Conclusion

We adopt Judge Rice's Report and Recommendation and dismiss Mr. Green's petition. We decline to issue a certificate of appealability under 28 U.S.C. § 2253 as Mr. Green has not made a "substantial showing" any of the claims discussed above denied him a constitutional right.

---

[1] ECF Doc. No. 12 at *1.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Commonwealth v. Green*, No. 2711 EDA 2012, 2014 WL 10889887, at *1 (Pa. Super. Aug. 15, 2014).

[6] *Id.* at *3.

[7] *Id.* at *1.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at *3.

[12] *Id.*

[13] *Id.*

[14] ECF Doc. No. 12 at 15.

[15] Notes of Testimony ("N.T.") August 24, 2012 Trial at 130-33; *Green*, 2014 WL 10889887, at *1.

[16] N.T. August 24, 2012 at 188-89.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 185.

[20] N.T. August 23, 2012 Trial at 65.

[21] *Id.* at 65-66.

[22] *Id.* at 105.

[23] *Id.* at 104-05.

[24] *Id.* at 105.

[25] *Green*, 2014 WL 10889887, at *1.

[26] *Id.* at *2.

[27] *Id.*

[28] *Id.* at *3.

[29] N.T. August 27, 2012 Trial at 125.

[30] ECF Doc. No. 12 at 2.

[31] N.T. August 24, 2012 Trial at 241-44.

[32] *Id.* at 244.

---

[33] N.T. August 23, 2012 Trial at 200 ("I [Mr. Franklin] saw Amar shoot him from the passenger's side[.]"); N.T. August 24, 2012 Trial at 188 ("Amar shot the dude once in the neck, and he kept firing until the dude fell off the bike . . . and the two of them [Mr. Green and his co-defendant] just kept walking[.]").

[34] ECF Doc. No. 12 at 6.

[35] *Id.*

[36] N.T. August 28, 2012 Trial at 241-42.

[37] N.T. August 28, 2012 Trial at 9.

[38] *Id.* at 48-49.

[39] *Id.* at 45.

[40] *Commonwealth v. Green*, No. 681 EDA 2018, 2018 WL 6060547, at *3 (Pa. Super. Nov. 20, 2018).

[41] ECF Doc. No. 12 at 6.

[42] *Commonwealth v. Green*, No. 2711, 2014 WL 10889887 (Pa. Super. Aug. 15, 2014).

[43] *Id.* at *4.

[44] *Id.*

[45] ECF Doc. No. 12 at 2.

[46] *Id.* at 3.

[47] *Green*, 2018 WL 6060547, at *1-2.

[48] *Id.* at *3.

[49] ECF Doc. No. 12 at 3.

[50] ECF Doc. No. 2 at 33, 37, 41.

[51] *Id.* at 35, 50, 59, 63.  As Judge Rice correctly pointed out about this fifth claim, "Green raised a similar claim in state court, arguing there was insufficient evidence to support a consciousness of guilt jury instruction.  To the extent he raises that same claim in his federal petition, it is non-cognizable."  ECF Doc. No. 12 at 15 (citations omitted).

[52] ECF Doc. No. 12 at 1.

---

[53] ECF Doc. No. 22.

[54] In *United States v. Scripps*, our Court of Appeals remanded to the district court for an evidentiary hearing on the defendant's section 2255 petition asserting ineffective assistance of counsel for advising Mr. Scripps to not speak during sentencing. 961 F.3d 626. Our Court of Appeals held we "must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Scripps*, 961 F.3d at 631-632. Unlike in *Scripps*, the factual record and briefing before us "conclusively show [Mr. Green] is entitled to no relief." *Id.* We do not believe further factual development is necessary and, under *Scripps*, we need not hold an evidentiary hearing.

[55] *Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018) (citing 28 U.S.C. § 2254(a)).

[56] *Eley v. Erickson*, 712 F.3d 837 (3d Cir. 2013).

[57] *See id.* at 845; 28 U.S.C. § 2254(d)(1).

[58] *Bell v. Cone*, 535 U.S. 685, 694 (2002).

[59] *Williams v. Taylor*, 529 U.S. 362, 389 (2000).

[60] *Bell*, 535 U.S. at 694.

[61] *Eley*, 712 F.3d at 846.

[62] *Williams*, 529 U.S. at 389.

[63] 28 U.S.C. § 2254(d)(2).

[64] *Eley*, 712 F.3d at 846.

[65] *Id.*

[66] ECF Doc. No. 2 at 33, 37, 41.

[67] *Id.* at 33.

[68] 28 U.S.C. § 2254(d)(2).

[69] *Id.* at *4.

[70] 433 U.S. 307 (1979).

[71] *Id.* at 319.

---

[72] *Id.*

[73] *See id.* at 322 ("[M]ost meritorious challenges to constitutional sufficiency of the evidence undoubtedly will be recognized in the state courts, and, if the state courts have fully considered the issue of sufficiency, the task of a federal court should not be difficult.").

[74] *Green*, 2014 WL 10889887, at *4.

[75] *Id.* at *5.

[76] *Id.* (quoting *Commonwealth v. Boxley*, 838 A.2d 608, 612 n.1 (Pa. 2003)).

[77] *Id.* at *6.

[78] *Id.*

[79] *Id.* at *5-6.

[80] *Kirnon v. Klopotoski*, 620 F. Supp. 2d 674 (E.D. Pa. 2008).

[81] *Id.* at 678.

[82] *Id.*

[83] *Id.*

[84] *Id.* at 680, 685.

[85] *Id.* at 689.

[86] *Green*, 2014 WL 10889887, at *1.

[87] *Id.*

[88] *Id.* at *1, *5.

[89] *Compare id.* at *4 ("[T]he Commonwealth failed to prove that Appellant committed an intentional killing and possessed a premeditated, shared specific intent to kill[.]"), *with* ECF Doc. No. 2 p. 33 ("[T]he Commonwealth failed to prove beyond a reasonable doubt that [petitioner] committed an intentional killing and possessed a premeditated specific intent to kill[.]").

[90] *See* ECF Doc. No. 2 at 33-35.

[91] *Id.* at 35.

[92] *See Green*, 2014 WL 10889887, at *5 ("We conclude that Appellant's actions, taken as a whole, demonstrate that he and Custis shared the specific intent to kill decedent. Contrary to Appellant's contention, the record further reveals that the jury could infer that Appellant had a specific intent to kill [based on Gulino's testimony] . . . .").

[93] ECF Doc. No. 2 at 37.

[94] *Commonwealth v. Green*, No. 681 EDA 2018, 2018 WL 6060547, at *1, *3 (Pa. Super. Nov. 20, 2018).

[95] *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[96] *Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018) (citing 28 U.S.C. § 2254(a)).

[97] 28 U.S.C. § 2254(d)(2).

[98] *Id.* at *2.

[99] *Strickland*, 466 U.S. at 687.

[100] *Id.*

[101] *Id.*

[102] *Id.* at 689.

[103] *Id.*

[104] *Id.* at 691.

[105] *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

[106] *Strickland*, 466 U.S. at 687.

[107] *Id.* at 694.

[108] *Id.* at 696 ("Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

[109] *Id.* at 695.

[110] *Green*, 2018 WL 6060547, at *2.

[111] *Id.* at *3.

[112] *Id.* (citing N.T. January 30, 2018 Hearing at 3-7).

[113] *Id.* at *1, *3; *see also* N.T. January 30, 2018 at 7 ("This is certainly not a witness who this Court would consider having a good character for peacefulness.  Once peacefulness was put out on direct examination and character as reputation evidence, there was much fodder for the Commonwealth.").

[114] *Jeffs v. Secretary Pennsylvania Department of Corrections*, 715 F. App'x 131 (3d Cir. 2017).

[115] *Id.*

[116] *Id.* at 132-33.

[117] *Id.* at 134.

[118] *Id.*

[119] *Green*, 2018 WL 6060547, at *3.

[120] *See* ECF Doc. No. 2 at 40-41.

[121] *Id.* at 41.

[122] N.T. August 29, 2012 Trial at 45.

[123] *Green*, 2014 WL 10889887, at *3. The Commonwealth suspended the charges against Mr. Green for six years until it could locate Mr. Franklin.

[124] ECF Doc. No. 2 at 38.

[125] *Commonwealth v. Neely*, 561 A.2d 1, 2 (Pa. 1989).

[126] N.T. January 30, 2018 at 3-7.

[127] *Commonwealth v. Weiss*, 606 A.2d 439, 442 (Pa. 1992).

[128] ECF Doc. No. 12 at 5.

[129] ECF Doc. No. 12 at 5.

[130] ECF Doc. No. 2 at 41.

[131] *Green*, 2018 WL 6060547, at *3.

[132] *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[133] *Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018) (citing 28 U.S.C. § 2254(a)).

[134] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[135] *Donnelly*, 416 U.S. at 643.

[136] *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

[137] *Id.*

[138] *Donnelly*, 416 U.S. at 647.

[139] *Id.*

[140] *Green*, 2018 WL 6060547, at *3.

[141] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[142] *Green*, 2018 WL 6060547, at *3.

[143] ECF Doc. No. 12 at 6.

[144] *Green*, 2018 WL 6060547, at *3.

[145] N.T. August 28, 2012 Trial at 241.

[146] *Id.* at 241-42.

[147] *Green*, 2018 WL 6060547, at *3.

[148] *Id.*

[149] *Id.*

[150] *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000).

[151] *Id.* at 189.

[152] *Id.* at 199.

[153] *Id.* at 205.

[154] *Id.*

[155] *See* ECF Doc. No. 2 at 41-48 (failing to address co-defendant's acquittal in light of prosecutor's alleged misconduct).

[156] *Green*, 2018 WL 6060547, at *3 (categorizing prosecution's comments as "a fair response to the other defense counsel's ploy."); N.T. January 30, 2018 Hearing at 12 ("It was a tricky move on the part of Defense Counsel to actually try to get credibility for his client with the jury without testifying. In that regard, this Court would find that it is fair response.").

[157] *See* N.T. August 28, 2012 Trial at 241 ("When [co-defendant] stood up at the beginning of this trial, and said: 'Not guilty' that's what we call an arraignment . . .  It is not what they call testimonial.").

[158] *Id.* at 241-42.

[159] *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

[160] ECF Doc. No. 12 at 6.

[161] *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007); 28 U.S.C. § 2254(b)(1)(A).

[162] *Coleman v. Thompson*, 501 U.S. 722 (1991).

[163] *Id.* at 750.

[164] *Leyva*, 504 F.3d at 366.

[165] *Id.*

[166] *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002).

[167] *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

[168] *Id.*

[169] *Id.*

[170] *Albrecht v. Horn*, 485 F.3d 103, 124 n.7 (3d Cir. 2007).

[171] ECF Doc. No. 2 at 35, 50, 59, 63.

[172] *Id.* at 35, 50-63.

[173] *Id.* at 50-58.

[174] *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

[175] *Strickland v. Washington*, 466 U.S. 668, 689, 695 (1984).

[176] *Bullcoming v. Mexico*, 564 U.S. 647, 658 (2011).

[177] *Id.*

[178] *See Portes v. Capra*, 420 F. Supp. 3d 49, 56 (S.D.N.Y. 2018) ("[T]he Supreme Court has not firmly determined if autopsy reports are testimonial evidence subject to the Confrontation Clause[.]").

[179] *Id.* at 56.

[180] *Johnston v. Mahally*, 348 F. Supp. 3d 417 (E.D. Pa. 2018).

[181] *Id.* at 425.

[182] *Id.* at 426.

[183] *Id.*

[184] *Id.* at 427.

[185] *Id.* at 436.

[186] *See* ECF Doc. No. 2 at 50-58.

[187] *Id.*

[188] *Green*, 2014 WL 10889887, at *5.

[189] *Id.*

[190] ECF Doc. No. 2 at 58.

[191] *Id.* at 54, 57.

[192] ECF Doc. No. 12 at 11.

[193] ECF Doc. No. 2 at 59-62.

[194] N.T. August 27, 2012 Trial at 125-27.

[195] ECF Doc. No. 2 at 60-61.

[196] *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

[197] *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008).

[198] *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004).

[199] *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 145-46 (3d Cir. 2017).

[200] *Id.* at 146.

[201]  ECF Doc. No. 2 at 59-62.

[202] *Id.* at 60.

[203] *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("Moreover, counsel cannot be deemed ineffective for failing to raise a meritless claim).

[204] *Martinez*, 566 U.S. at 14.

[205] ECF Doc. No. 12 at 12.

[206] ECF Doc. No. 2 at 63.

[207] N.T. August 23, 2012 Trial at 65-66.

[208] ECF Doc. No. 2 at 63.

[209] *Martinez*, 566 U.S. at 14.

[210] *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011).

[211] *United States v. Sandini*, 888 F.3d 300, 311 (3d Cir. 1989).

[212] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

[213] N.T. August 23, 2012 at 65-66.

[214] ECF Doc. No. 2 at 63.

[215] *Id.*

[216] N.T. August 29, 2012 Trial at 9.

[217] ECF Doc. No. 12 at 13.

[218] ECF Doc. No. 2 at 63.

[219] N.T. August 24, 2012 Trial at 244.

[220] ECF Doc. No. 2 at 64.

[221] *Martinez*, 566 U.S. at 14.

[222] *United States v. Rivas*, 493 F.3d 131, 137 (3d Cir. 2007).

[223] *Id.*

[224] *Id.*

[225] ECF Doc. No. 2 at 64.

[226] N.T. August 24, 2012 at 244.

[227] ECF Doc. No. 12 at 14-15.

[228] ECF Doc. No. 2 at 35-36.

[229] N.T. August 29, 2012 at 48-49; *Green*, 2014 WL 10889887, at *7.

[230] ECF Doc. No. 2 at 35-36.

[231] *Green*, 2014 WL 10889887, at *7.

[232] *Green*, 2018 WL 6060547, at *3.

[233] ECF Doc. No. 2 at 36.

[234] ECF Doc. No. 12 at 16.

[235] *Miller-El v. Cockrell*, 537 U.S. 322, 335-37 (2003) (citing 28 U.S.C. § 2253).

[236] 28 U.S.C. § 2253.

[237] *Miller-El*, 537 U.S. at 336.

[238] *Id.* at 327 (citing 28 U.S.C. § 2253(c)(2)).

[239] *Id.* at 323 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[240] Fed. R. App. P. 22(b)(1).